If the Court please, Mitchell, A. Kramer representing the plaintiffs, Edward Boracchia and Boracchia and Associates. Mr. Kramer. Boracchia. Is that correct? Boracchia. Very good. Boracchia. Sorry. Mr. Kramer. Starting out contradicting the Court is not a good thing. May I reserve one minute for rebuttal? You certainly may, but keep track of your time. I will do my best, sir. The central issue in this case is whether the Uniform Commercial Code governs a contract between a manufacturer and a manufacturer's representative. In this case, Boracchia was a manufacturer's representative providing marketing services and promotional services for Biomet, a manufacturer of orthopedic implants, hips and knees. Boracchia promoted these products by going to see the – by he and his salespeople going to hospitals, promoting doctors to utilize the Biomet hips and knees. Do I have the facts right on this? Sometimes when somebody is doing this sort of work, the manufacturer sells to the distributor, the distributor pays for it, has title to it, and then sells to the retailer, in this case the hospital. Sometimes the distributor solicits orders which go from the consumer, the hospital in this case, well, the purchaser of the hospital in this case, to the manufacturer and the middleman gets a commission but never receives the goods, possesses them, or has title to them. I understood that this was the second type of arrangement, but I want to make sure that's entirely correct. Your Honor is absolutely correct. Different manufacturers treat their sales operation differently. In this case, Boracchia did not take title. He did not sell the product directly. He went to the hospital, the hospitals ordered directly from Biomet, paid Biomet, and that was the relationship. Was the shipping direct from the manufacturer to the hospital? No, not necessarily. It might go to Boracchia? Generally, Boracchia would have a supply of products because there are different sizes necessary. So Biomet would supply him with consigned inventory. Consigned? Consigned, yes. Biomet owned the inventory. Boracchia never bought the inventory. It was consigned to Boracchia in his warehouse. Did Boracchia ever send checks? Sometimes title can be manipulated a little. No. No checks? No. For the implants, no. That's right. No. So that's the basis for your argument that UCC does not apply because there are not a sale of goods here. There is a performance of services. That's exactly right, Your Honor. The only difficulty, as I see, and this seems to me to be probably the most important issue in this case, is whether you've waived the UCC. If you have, then all these arguments are irrelevant. Now, when it came before the district court, I've read the district court's opinion. I've read the record of where it took place. And it seems to me that it was not preserved. And I'd like to have your best argument of why you think that's incorrect. I will do my best, Your Honor. The position, the fact that the UCC is not determinative of the case was, in fact, argued before the district court at the summary judgment argument. My partner and my daughter, Barbara Kramer, argued that case, argued that issue. It's specifically in the record. The argument before the district court judge is in the record, and she specifically raised the UCC issue, and she specifically raised the issue of the statute of limitations. That may be well, but we give district courts a lot of leeway to make sure things occur in proper order. And in the order, the judge says that oral argument plaintiffs asserted without citation to any authority that the UCC did not apply, as you say, and Indiana 20-year statute written, et cetera. Plaintiffs' new argument is not well taken. Now, there may be a little confusion of what not well taken means, but if we go back to the actual court hearing, the court went on E.R. 33 at a great length of why he's not hearing it. He's just following his the way he's done case management, and it's too late. Well, except, Your Honor, that when he wrote his opinion, in the opinion, he discusses these two arguments, the UCC argument and the statute of limitations argument in the Indiana statute, and says, I reject them. That's specifically in the opinion. And you're going to do that? Of course. Judges frequently do alternatives because they don't know what we're going to do to them. But it seems to me that, and you correct me if you're wrong, but it seems to me that if you read the order together with the transcript at E.R. 33, he's saying it's just too late, you didn't follow the case management that I've set up. I read that differently, since, in fact, he did discuss the arguments in his opinion. But also, Your Honor, in the recent case that the defendants brought to the Court's attention, the Gordon case, in that case, this Court stated specifically, the Court rejected an argument based on waiver. And what the Court said in the Gordon case was, we're rejecting it because it was not raised in the reply brief or at oral argument, which to me implies that if you raise it in oral argument, it is all right. Secondly, in the Northwest environmental case, which we cite also, the Court rejected a waiver argument, since the district court, in fact, had discussed the issue, so the Court said it was not waived. Also, Your Honor, in the record, it points to the attorney, and I don't know if I want to get much into that, the attorney who actually did the research and wrote the brief went into depression because she had a son with muscular dystrophy. We didn't know it. She didn't work in our office. She worked 40 miles away. Her son was dying of muscular dystrophy and, in fact, did die. We didn't know. We knew he had muscular dystrophy, obviously, which is why she stayed home. We did not know that he was on his last time. And what happened was – and by the way, this is not a – this was a woman lawyer with us who had been a permanent law clerk for a Federal district court judge for 12 years, came with us after the judge retired and is now an administrative law judge. So we had great confidence in her. When, as we – after the briefs were written, we realized that she had never looked because it was not in the brief at the Indiana statute of limitations itself, which is the 20-year statute. We discussed it with her. She was just in depression. It was horrible. But that's sympathetic, but it's a partial answer. But, Your Honor, the real answer is I believe that we argued it. It was argued. It was brought to the judge's attention. And the judge, in fact, ruled on it. I hear how Your Honor read his words. And they certainly could be taken that way. You read it that he didn't impose a waiver? Yes. He never says I'm rejecting these because it was waived. What he says was you guys should have done better. But he still – But he did decide it on the merits. I'm sorry? He did decide it on the merits. He decided on the merits. He addressed the – That's correct. He addressed the UCC issue and he addressed the 20-year statute of limitations in the Indiana – in the end, the strange – I mean, strange, but pre-1982 contracts come under the Indiana 20-year statute. And he addressed both of those issues in his opinion. And your notice of appeal references to the final judgment. So I assume that would apply to everything that was in the final order. Yes. In our – yes, that's correct. In our brief, we – I know that the defendant said that we had waived the representative statute argument, but it was not. In the brief itself, we say that the judge dismissed all of the claims. We mention specifically the Ratback claim and say the judge – Counsel, you're down to about a minute right now, so you may want to resume. Thank you, Your Honor. Thank you very much for your questions. Hopefully I've answered them. Okay. I believe that this case should be reversed because this is not a UCC case. Thank you. May it please the Court. And good morning. My name is Torrey Griffin. I represent the Appellee Environment, Inc. in this matter. Counsel, I have a question for you. Yes, Your Honor. We've said in Carman that the district court does not have to search the entire record and need only consider the matters raised on the motion for summary judgment. Typically the motion, opposition, reply, the papers attached, and perhaps the things referred to. We were not discussing one way or the other whether the judge needed to consider oral argument because it didn't come up in the case in Carman. In this case, it seems pretty clear that the argument for the 20-year Indiana statute did not come up in the briefs and did come up in oral argument. And when I look at the judge's decision at ER6 lines 18 through 24, it looks like he just did not apply waiver. He didn't say that the plaintiffs waived the argument. He said that plaintiffs did not oppose in their response of briefing that the plaintiffs asserted without citation to any authority that the UCC did not apply and that Indiana's 20-year statute of limitations for written contracts would instead apply. And then I was waiting for him to say it was waived because it should have been raised in the briefs, and he didn't. He said plaintiffs' new argument is not well taken and explained apparently that he was applying the UCC on the merits. Why doesn't that mean what the appellants suggest, that the district court did not treat the argument as waived and considered it and rejected it on the merits? Several part answer to that question, Your Honor. With respect to the district court judge's opinion, I read the opinion in conjunction with the transcript of the hearing, with the comments the district court judge made at the transcript of the hearing to say that the new arguments presented by plaintiff below were too late. Now, with respect to the judge's opinion of the district court judge's opinion, I read the opinion of the district court judge's opinion of the district court judge being too late and there's a proper procedure to be followed, et cetera. The way I read the district court judge's order, the written order, with respect to the argument not being well taken, is in conjunction with and consistent with the Carmen case, and that is, here, in order for the UCC to apply or not apply, it's a question, mixed question of law and fact, and it's dependent on the predominant thrust test that, in turn, is dependent on the factual record being developed. And Carmen applies here because, in the written opposition to the motion for re-judgment. Am I remembering Carmen right, that the issue never came up of whether something could be considered for moral argument? What it was was Carmen had a perfectly good document that would have prevented some re-judgment in some earlier motion she'd filed that was in the one or two drawers of the file cabinet that the clerk had, and she wanted that to defeat some re-judgment. And we said it wasn't referred to in the opposition, it wasn't attached to the opposition. The judge doesn't have to go through the whole file cabinet. That's correct. That's what Carmen did. But what Carmen did. That's what you wrote. That's what I meant. I said. What I believe the Court was supposed to do, I mean, Carmen was interpreting the Federal Rules of Procedure, and it was talking about Rule 56 and what in a, what the. Let's get a little narrower than Carmen. You know, I read E.R. 33, lines 13 through 21, and it kind of looks like waiver. And then I read the subsequent written order memorializing what the judge meant. E.R. 6, lines 18 through 24, and it looks like not waiver, merits. If he'd stopped, if he just said, clerk, enter judgment on my oral decision, you'd be in a lot stronger position. What are we supposed to do about waiver if he says one thing orally and another in writing? Well, I don't think they're inconsistent again, because in order to get to Indiana's 20-year statute of limitations, the judge would have to make a finding, the district court judge would have had to make a finding that the UCC didn't apply. When the district court judge says the argument is not well taken, the district court was pointed to no facts anywhere, either in the written opposition or at oral argument, to support a colorable claim and raise a genuine issue of material fact as to whether or not there was or was not, in fact, sale of goods. That I don't understand. It jumped right out at me, actually, when I looked at the file. UCC. I know UCC. Sale of goods. Were they selling goods? It looks like they're just taking orders. I wonder why all these people are talking about the UCC. It just jumps right out. And the only facts they need are whether they purchased the medical materials from Biomet and resell them or whether they just take orders, which Biomet fills. What facts would they need beyond what they brought out? Well, Your Honor, there is a factual record that wasn't actually developed here, and I understood you. I heard your questions to my colleague here. Yes, and I'd appreciate it if I've got a mistaken impression. Sure. There, in fact, is evidence in this record. There is a actual termination letter that was sent to Mr. Baraki in 2006, and in that letter it discusses the inventory that was in Mr. Baraki's possession and the fact that that inventory is valued at $1.6 million. That's at ER 72. And in the termination letter, Biomet agrees to repurchase those instruments from Baraki and then sets forth a proposed negotiation of what that price might be. Is there any evidence of a sale in the first place? Of a sale to Mr. Baraki? There is no evidence of a sale to Mr. Baraki, and the reason why the factual record isn't developed is because it wasn't raised by my opposition in the district court below. Where's the repurchase language? It's at ER 72, Your Honor. There's a – and this goes to my point that there is a – not a sufficiently developed factual record on that issue to decide that issue on appeal, because there is – there is a piece of correspondence in the record where Baraki apparently had title to $1.6 million worth of instruments that Biomet was agreeing to repurchase. In that context, there's no factual development of what those instruments were, how – the magnitude of those instruments in relation to the supply that Mr. Kramer has conceded that Baraki actually possessed. Is there any evidence that – of actual funds transferred from Baraki to the company with respect to purchasing those instruments in the first place? There is no evidence one way or the other, Your Honor. Where's this repurchase language? I'm looking for it right now, and I missed it. ER 72, I believe, is the – if I have it right in my notes, is the 2006 termination letter, where I believe it's somewhere down the – It says repurchase your instruments. I had assumed that was financial instruments. You're saying instruments means inventory? It's inventory. My understanding of that is inventory, Your Honor. And then it goes on to discuss a credit for various other matters and then proposes  It doesn't say inventory. It says instruments, including all standard instruments, custom instruments, samples, and literature. That's to Mr. Kramer. What are instruments? Is that the artificial elbows or whatever they were? Yes, it is. Partly yes, it is, Your Honor. And again, this all goes to my point that the factual record here is not sufficiently developed for this Court to reach that issue. They use the word inventory on the third page of the letter. It means the same thing? Yes. Are you suggesting that if we find against you, our response should be to remand for further consideration by the district court? No. No, Your Honor. I think if this Court were to find that the UCC or there are questions about whether the UCC applied, actually I think what this Court should do under the doctrine of waiver is apply what the appellant suggests this Court should do is apply California's four-year statute of limitations. And the reason I say that is because the one issue that was clearly waived here is the plaintiff's reliance on 20-year, the Indiana 20-year statute of limitations. And I say that because contrary to the UCC argument, Your Honors, in oral argument below, the plaintiff expressly stated that it is our position that California law applies, Your Honor, to the statute of limitations questions. And then she says if in fact Indiana law applies, there's a very strong argument that it's a 20-year statute of limitations, but then goes on to say this was not something we focused on because we really think that. Although it's perhaps not to our advantage, think that, number one, California law applies to the statute of limitations. So not only did it was the 20-year statute of limitations not raised in the briefing, but it was expressly disclaimed by the plaintiff at oral argument when the plaintiff urged the district court to apply California's four-year accrual rule. And that's at ER 18 at lines 8 through or lines 11 through 20. I see that my time is up, Your Honor. Kennedy. Can you explain what the words consigned and mentoree mean on page 3 of that letter? Your Honor, that is exactly what I believe it means, and that is inventory is sent to Barakia for purposes of Barakia then going out and selling to hospitals. But it's not being purchased by Barakia. It's not being purchased by Barakia. It's simply consigned. It's simply consigned. Okay. Those instruments that they were talking about repurchasing, is that something different from the consigned inventory? Your Honor, I will confess that I do not know the answer to that. And that's the problem we have with this record on this particular issue, that it's not fully developed. Is there something else here that shows? Not that I'm aware of, Your Honor. Not in the record, no. Thank you, counsel. Your time has expired. Mr. Cramer, you have a little time left. Yes, Your Honor. The answer is that the instruments are purchased from Biomet. They are not sold. They are lent to the doctors to perform surgery. And Barakia will take the instruments to the surgery and then take them back. But what about this repurchase language? How are we supposed to interpret that? Well, Barakia bought the instruments from Biomet. He doesn't sell them. What are instruments? Instruments are the things that the doctor uses to implant the knees and the hips. Oh, you mean like forceps, a piece of metal and screwdrivers to tighten them down? Yeah, but it's much more complicated than that. A set of instruments costs about $80,000, $90,000. What do we put in? Should we think of this, Biomet is willing to repurchase your instruments? Yes, they did. Your indicates that your client owns them, huh? He did. My client owned the instruments. The difference is that he didn't sell them. Are you saying the instruments are the tools the doctor uses to install the appliance into the patient's bones? Exactly, Your Honor. But the appliances are not bought. No, the appliances are not bought. Let me just say one thing. At the oral argument, the judge did say when these issues were raised by Barbara Kramer, he's ‑‑ I'm sorry. He said when the cases were raised, the judge said I will take a look at these cases. And, in fact, he did and decided the case and rejected this argument. All right. Thank you, Your Honor. Thank you, counsel. The case just argued will be submitted for decision.
judges: Wallace, O'scannlain, Kleinfeld